UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80138-CR-MARRA/VITUNAC

UNITED STATES OF AMERICA,

v.

GEORGE FORGIONE,

          DEFENDANT.
_____/

ORDER GRANTING MOTION FOR REVOCATION OF RELEASE ORDER
AND ORDER OF DETENTION

This matter came before the Court on the motion of the United States of America seeking the revocation of the release order entered by a Magistrate Judge in the Eastern District of New York which granted bond to Defendant George Forgione. The Court has reviewed the transcripts of the initial appearance and the detention hearing before the Magistrate Judge, the Pretrial Services Report submitted to the Magistrate Judge, the motion of the government, Defendant's response to the motion and the government's reply. Upon a *de novo* review of the record and otherwise being fully advised in the premises, it is hereby ORDERED AND ADJUDGED as follows:

### *PROCEDURAL BACKGROUND*

On September 14, 2007, a superceding indictment was entered against Defendant and his Co-defendant, Frank Sarcona, alleging that the defendants operated a business known as "The Lipoban Clinic" which sold a purported weight loss product called "Lipoban Dietary Supplement." It is further alleged that in connection with marketing the Lipoban product, the

defendants made misrepresentations and omissions of material fact including, but not limited to: 1) that Defendant was a doctor and was the "Clinical Director" of "The Lipoban Clinic, Inc."; 2) that "The Lipoban Clinic" was a healthcare clinic involved in medical studies and treatment of obesity; 3) that a Dr. Joseph Maya, M.D. was the medical program director of the clinic; 4) that the business had a team of researchers and a trained staff of weight loss and nutritional professional and 4) that "Lipoban" had been clinically proven to cause people to lose weight without diet or exercise.

Defendant has been charged with conspiring to commit mail fraud, wire fraud and criminal contempt of a federal court injunction in violation of 18 U.S.C. § 371; with twenty-five counts of mail fraud in violation of 18 U.S.C. § 1341 and 2; three counts of wire fraud in violation of 18 U.S.C. § 1343 and 2; one count of conspiracy to engage in money laundering in violation of 18 U.S.C. § 1956(h); eight counts of promotion money laundering in violation of 1956(a)(1)(A)(i) and 2; two counts of money laundering concealment in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 2; nine counts of money laundering transactions in excess of $10,000.00 in violation of 18 U.S.C. § 1957 and 2; ten counts of introduction of misbranded food in violation of 21 U.S.C. § 331(a), 343(a)(1), 333(a)(2) and 18 U.S.C. § 2 and criminal forfeiture. DE 9.[1] The Government contends that over 100,000 people were defrauded by the defendants and that they collected over $14 million as a result of the allegedly fraudulent conduct. If Defendant is convicted as charged, the government estimates that Defendant's advisory guideline sentencing

---

[1] Earlier on September 14, 2007, the original indictment was entered in this case. DE 4. The superceding indictment did not materially change the allegations or counts asserted against Defendant.

range would be 210-262 months.

Defendant was arrested at J.F.K. International Airport in New York after returning from the Ukraine. Defendant had an initial appearance and a detention hearing before a Magistrate Judge from the Eastern District of New York. The United States requested that Defendant be detained pending trial based upon the assertion that he is a flight risk and a danger to the community. The Magistrate Judge, after hearing from Defendant's brother, Defendant's brother's estranged wife and Defendant's son, all of whom agreed to act as sureties, granted Defendant bond in the amount of $1 million to be secured by various parcels of real property. The Magistrate Judge also imposed other conditions.[2]

The United States has sought review by this Court of the Magistrate Judge's decision to grant Defendant bond pursuant to 18 U.S.C. § 3145 (a)(1). The United States asserts that the Magistrate Judge erred in failing to find Defendant is a flight risk and a danger to the community. Regarding the question of being a flight risk, the government relies primarily upon the fact that Defendant was in the Ukraine at the time the indictment was handed down. The government asserts that Defendant failed to return to the United States voluntarily after he learned of the indictment and that he was forced to leave the Ukraine after his visa was not renewed. The government also contends that Defendant is a danger to the community because he had threatened his Co-defendant and a Ukranian who had received money for the benefit of

---

[2] The other conditions of bond were: 1) surrender of all passports and Defendant cannot apply for any passports; 2) supervision by Pretrial Services; 3) report as directed by Pretrial Services; 4) subject to random visits by Pretrial Services; 5) undergo evaluation and treatment for mental health problems as directed by Pretrial Services; 6) travel restricted to the State of Florida; 7) appear in court as directed; 8) not to commit any crimes and 9) avoid any attempt to influence the testimony of any potential witness.

Defendant. The government asserts that the Ukrainian was threatened after he would not release the funds to Defendant after it was learned the funds were allegedly laundered. The Court concludes that it only needs to consider the question of whether Defendant is a flight risk to resolve the present motion.

### *FACTS RELATING TO DEFENDANT BEING A FLIGHT RISK*

The United States proffered facts relative to Defendant being a flight risk both before the Magistrate Judge and in its briefs before this Court. Defendant was given three opportunities to refute the government's assertions: first, at the hearings before the Magistrate Judge; second, in response to the governments motion filed before this Court and third, when the Court permitted the parties to provide it with additional briefing by 5:00 p.m. on December 21, 2007. After a review of the government's proffer and Defendant's response, the Court concludes that the United States has established the following facts by a preponderance of the evidence.

First, Defendant testified before the grand jury on July 10, 2007. His testimony was disrespectful and combative. Eight days later, Defendant left the United States for the Ukraine. Defendant transferred over $200,000.00 to the Bahamas where he has traveled and he transferred $180,000.00 to the Ukraine where he remained until the day he returned to the United States and was arrested.[3] The government asserts, and Defendant did not refute in his most recent filing, that Defendant left a voice-mail message for a Deputy United States Marshal that was seeking Defendant's return to the United States to face the charges pending against him. In the message, Defendant stated he would not be returning as requested. Moreover, Defendant was brought

---

[3] Some of the funds transferred to the Ukraine were derived from the funds previously transferred to the Bahamas.

back to the United States involuntarily by a Ukrainian official and an Internal Revenue Service agent.  While Defendant's counsel suggests that it was merely fortuitous that Defendant was in the Ukraine at the time the indictment was returned, the Court concludes from the timing of Defendant's travel to the Ukraine, taken together with the transfer of funds and his refusal to return voluntarily,  that Defendant fled to the Ukraine and sought to remain there in order to avoid prosecution in this case.

      The United States has also proffered that the primary parcel of property which Defendant's sureties have agreed to post as security for his bond has significant liens.  Defendant asserts that his brother's wife's property has a market value of $1 million with a $200,000.00 mortgage, suggesting an equity of $800,000.00.  However, the government proffered, and Defendant did not specifically refute, that there is a New York tax lien on the property of over $500,00.00 filed on September 13, 2002, a $122,000.00 lien from 2001 and a $140,000.00 judgment against the wife of Defendant's brother.  This leaves little equity in the property and relatively little at risk to entice Defendant to appear for trial if he is released on bond.

      ***DISCUSSION***

      ***DEFENDANT IS A FLIGHT RISK REQUIRING AN ORDER OF DETENTI0N***

      In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the court is required to consider: 1) the nature and circumstances of the offense charged; 2) the weight of the evidence against the person; 3) the history and characteristics of the person and 4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g).  As to the first factor, the charges against Defendant

5

are serious. The government contends that the amount of loss in the alleged scheme is in excess of $14,000,000.00. The conspiracy charge carries a five year statutory maximum sentence. The mail and wire fraud charges, as well as the various money laundering charges each carry twenty year statutory maximums. The introduction of misbranded food charges each carry a three year statutory maximum. The government estimates that if Defendant is convicted as charged he faces an advisory guideline sentencing range of 210-262 months. The substantial prison sentence Defendant faces, combined with his age of 54 years, renders it unlikely Defendant will voluntarily appear for trial if released.

As to the second factor, there is substantial evidence to support the charges brought against Defendant in this case. The representations that Defendant was a doctor, that he was the "Clinical Director" of "The Lipoban Clinic" which was involved in medical clinical studies, that the defendants had a trained staff of weight loss professionals and misrepresented information about the purported medical director weigh heavily against Defendant. These allegations are easily provable and almost prima facie fraudulent. The weight of the evidence against Defendant supports the conclusion that Defendant will not voluntarily appear for trial.

Defendant's history and characteristics also weigh in favor of a finding that Defendant is a flight risk. As outlined previously, Defendant has traveled extensively and, in this Court's view, fled to the Ukraine to avoid prosecution in this case. Defendant would not return to the United States voluntarily to face the charges pending against him and will flee again if given the chance. Additionally, the insignificant equity in the property being pledged as security for his bond gives Defendant little incentive to appear for trial since the sureties have relatively little to lose if Defendant flees. Furthermore, Defendant's unstable mental health suggests to the Court

that he cannot be relied upon to act in accordance with any conditions of bond.

Lastly, Defendant should be confined pretrial in order is to protect the community from additional harm. The government proffered evidence of threats of physical harm that Defendant made to third parties. Defendant did not refute these assertions. While Defendant's Co-defendant, who is being held in pretrial detention, is probably safe from any harm from Defendant, the individual in the Ukraine who received transfers of money for Defendant's benefit may not be. This is especially true in view of Defendant's mental health issues.

A finding that a defendant is *either* a flight risk *or* a danger to the community is sufficient to justify pretrial detention. *United States v. King,* 849 F.2d 485, 488 (11th Cir. 1988). A preponderance of the evidence standard applies to the determination of whether a defendant poses a high risk of flight. *King,* 849 F.2d at 489; *Medina,* 775 F.2d at 1402. Based upon the seriousness of the offenses with which Defendant is charged, the substantial evidence supporting the charges, Defendant's age and the significant prison sentence he faces if convicted, Defendant's flight to the Ukraine in order to avoid the charges in this case and his failure to return voluntarily, Defendant's mental instability and the insufficient security at risk if Defendant is released on bond, the Court finds, by a preponderance of the evidence, that Defendant has no incentive to appear for trial if released from custody and therefore is a flight risk. Defendant, George Forgione, is hereby detained pending further order of this Court because no condition or combination of conditions will reasonably assure Defendant's appearance as required.

Defendant is hereby committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

While in the custody of the Attorney General, Defendant shall be afforded reasonable opportunity for consultation with counsel.

On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility at which Defendant is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

Done and ordered in Chambers in West Palm Beach, Palm Beach County, Florida, this 26th day of December, 2007.

                KENNETH A. MARRA
              UNITED STATES DISTRICT JUDGE