```
 1                 UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
 2
                     Case No. 07-80138-CR-MARRA
 3
    UNITED STATES OF AMERICA,      )
 4                                 )
          GOVERNMENT,              )
 5                                 )
          -v-                      )
 6                                 )
    GEORGE FORGIONE,               )
 7                                 )
          DEFENDANT,               )    West Palm Beach, Florida
 8                                 )    March 12, 2010
    _____)
 9

10              TRANSCRIPT OF SENTENCING PROCEEDINGS

11           BEFORE THE HONORABLE KENNETH A. MARRA

12                 UNITED STATES DISTRICT JUDGE

13

14  Appearances:

15  FOR THE GOVERNMENT          Kerry S. Baron, AUSA
                                United States Attorney's Office
16                              500 South Australian Avenue
                                Suite 400
17                              West Palm Beach, FL 33401

18
    FOR THE DEFENDANT           Alan S. Futerfas, ESQ.
19                              260 Madison Avenue, 22nd Floor
                                New York, NY 10016
20

21  Reporter                    Stephen W. Franklin, RMR, CRR, CPE
    (561)514-3768               Official Court Reporter
22                              701 Clematis Street, Suite 417
                                West Palm Beach, Florida  33401
23

24

25
```

Page 2

```
 1          (Call to the order of the Court.)

 2               THE COURT:  Good afternoon, please be seated.

 3               MR. BARON:  Thank you, Your Honor.  Good afternoon.

 4               MR. FUTERFAS:  Good afternoon, Your Honor.

 5               THE COURT:  This is the case of the United States of

 6     America versus George Forgione, Case Number 07-80138-CR-MARRA.

 7               May I have counsel state their appearances, please.

 8               MR. BARON:  Good afternoon, Your Honor.  Kerry Baron,

 9     Assistant United States Attorney, for the United States.  And

10     with me, Your Honor, at counsel table is special agent Julie

11     Nicholson, of the IRS Criminal Investigation.

12               THE COURT:  Good afternoon.

13               MR. FUTERFAS:  Good afternoon, Your Honor.  Alan

14     Futerfas, 260 Madison Avenue, New York, New York, for

15     Mr. Forgione, who's present before the Court.

16               THE COURT:  Good afternoon.

17               All right.  We are here for sentencing.  Have both

18     sides reviewed the presentence investigation report?

19               MR. BARON:  Yes, Your Honor.

20               MR. FUTERFAS:  Yes, Your Honor.

21               THE COURT:  And has the Defendant reviewed it with

22     counsel?

23               MR. FUTERFAS:  Yes, he has.

24               THE COURT:  All right.  Are there any objections that

25     we need to discuss?
```

1          MR. BARON:  Your Honor, there are two things I need

2     to put on the record that are my fault.  I'll be very fast.

3          The first is in paragraph 1, it says he pled guilty

4     to counts 1 and 2 of a 62-count information.  The second

5     superseding that he pled to was only a two-count information,

6     and we agree to drop any other charges that had been in the

7     other.  Okay?

8          The second is, and it's meaningless, but I need to

9     tell the Court it's my mistake, we did not object for the

10    failure of the PSI to include sophisticated means.  The PSI

11    levels were beyond that anyway.  We're making a 5K1 motion to

12    the Court.  I'm sorry to the Court.  I tell you I didn't do

13    it, and I messed up.

14          Thank you, Your Honor.

15          THE COURT:  Okay.  His guidelines are above the

16    statutory maximum in any event, so . . .

17          MR. BARON:  Right.  But I didn't want anyone looking

18    ever to think that I was hiding something.

19          THE COURT:  Okay, Mr. Baron.

20          MR. FUTERFAS:  We would never think that.

21          THE COURT:  Are there any other guideline issues or

22    PSI issues that I need to resolve?

23          MR. FUTERFAS:  Very minor, Your Honor.

24          Paragraph 88 in the most recent presentence report

25    suggests that the potential fine is $20 million.  The plea

1    agreement, the plea allocution both state that the maximum

2    fine for each count is $250,000.  So we would ask that the

3    presentence report be amended for that.

4            THE COURT:  Is that -- is the report accurate?  Is it

5    really $20 million?

6            MR. BARON:  I missed that, Your Honor.  I thought it

7    was $250,000 for each count.  I do not see how the 3571 would

8    come into play, since he pled to the 371 conspiracy, Your

9    Honor, and not the money laundering count.

10           THE COURT:  So you'll take that out?

11           PROBATION OFFICER:  Yes, Your Honor.  That was an

12   error on Probation.

13           MR. FUTERFAS:  The next, again, very small point,

14   paragraph 98 of the most recent presentence report lists as a

15   potential condition of supervised release full-time

16   employment.  I direct Your Honor's attention to the addendum.

17   There was an addendum filed by Probation November 2nd of 2009

18   at page 7.  We had objected to that condition when it first

19   came out in the draft presentence report just because of

20   Mr. Forgione's various both physical and mental disabilities,

21   which we have discussed in our memorandum.  So to the extent

22   that there is a condition of supervised release that he

23   maintain full-time employment, I don't know if that's going to

24   be possible or not.  I'm just alerting the Court to that.  I

25   don't know if Your Honor has to make a finding one way or the

1 | other, but I did want to alert Your Honor to that.

2 | THE COURT:  Well, I'll decide what his conditions are

3 | going to be, and I'll decide whether to make full-time

4 | employment one of them, but that's a recommendation from

5 | Probation, that's not something that I'm required to either

6 | include or impose or not.  So I'll consider your request to

7 | not have that condition imposed when I impose sentence.

8 | MR. FUTERFAS:  That's really what it is.  And I've

9 | discussed this with Probation.  They're aware obviously of

10 | Mr. Forgione's condition, so they understand the situation.

11 | That's all we have, Your Honor.

12 | THE COURT:  All right.  Then I will adopt the

13 | findings of the presentence report as the findings of the

14 | Court, except with those modifications.

15 | All right.

16 | MR. FUTERFAS:  I'm sorry, Your Honor?

17 | THE COURT:  I said I will adopt the findings of the

18 | presentence report as the findings of the Court, with those

19 | modifications being made.

20 | MR. FUTERFAS:  Your Honor, the one -- and this isn't

21 | necessarily a -- this is not a probation objection, it's just

22 | something I'm alerting the Court to.  Mr. Forgione was brought

23 | here or was detained in the Ukraine four or five days before

24 | he was brought here.  The Government and I have discussed

25 | this.  I believe that under 3585, he was detained there

1    pursuant to some request by the Government here.  So those few

2    days, I think it's five or six days, should be counted.  That

3    is noted in the November 2nd, 2009, addendum at page 5 that

4    those facts exist.  So I'm just alerting the Court to that.  I

5    know the BOP makes those decisions about prior custody, but I

6    did want the record to reflect that.

7         THE COURT:  Does the Government disagree that he was

8    held by the Ukraine based on some request of the United States

9    Government?

10        MR. BARON:  Your Honor, the United States Government

11   has no extradition treaty with the Ukraine.  We did alert them

12   to the fact that we believe that his visa there had expired.

13   He was then arrested there pursuant to the fact that he was

14   the equivalent I guess of persona non grata.  He was arrested

15   when he got off the plane here in the United States, albeit he

16   was accompanied by a special agent from IRS on the trip.

17        If there are any days and how many days, I'd suggest

18   it's a BOP function to make that determination.

19        THE COURT:  Okay.  I'll recommend that they include

20   it, and they can consider my recommendation or not.  It seems

21   like he was there -- he was taken into custody.  But for the

22   actions of the United States, he wouldn't have been taken into

23   custody in the Ukraine apparently, and you got your hands on

24   him pretty quickly.  So I'll recommend that he get the credit

25   for those days.

1          What's the date that he was taken into custody in the

2    Ukraine?  I'll ask that that date be put in the judgment.

3          MR. FUTERFAS:  I believe the date we have, Your

4    Honor, is December 13, 2007, and he was arraigned in the

5    Eastern District of New York on December 18, 2007.

6          THE COURT:  I'll recommend that he get credit for

7    time served from December 13th of 2007.

8          All right.  You want to be heard on your motion for

9    5K1.1?

10         MR. BARON:  Yes, Your Honor.

11         And if the Court please, if the Court please, the

12   United States is going to make two recommendations to the

13   Court.  The first is that the Court grant its motion for

14   reduction pursuant to 5K1.1.  And I advise the Court that

15   after Booker, this is interesting in the fact that there's no

16   mandatory minimum.  It almost is akin to a variance from the

17   3553, but I'm going to say it as a 5K1.1 anyway.  We're going

18   to ask the Court to reduce the Defendant's sentence.  We're

19   going to ask the Court to sentence the Defendant to a period

20   of five years of incarceration.  That's our recommendation to

21   the Court.

22         I explain it to the Court as follows:

23         The Court's tried the case and was aware of the fact

24   that there were numerous turns and possibilities in the case.

25   From the earliest time, it's my understanding and belief that

1    Sarcona's first offense -- defense to the charges was that he

2    was merely a copyrighter who had no real input into this

3    scheme.  We believed it false.  The question was could we

4    prove it to a jury.

5          After Mr. Forgione agreed to cooperate, he provided

6    links to information that in part we had in front of us and in

7    part we didn't that explain things that was able to put the

8    onus of this organization back on Mr. Sarcona, the most

9    instrumental being Mike DiBiano.  What occurred was we had an

10   organization starting somewhere in March of 2000, and we had a

11   document that existed independently in February and an e-mail

12   in January.  And we're not sure whether or not that was

13   something that Forgione had done or was really Sarcona.  We

14   debriefed Forgione.  We spoke to DiBiano.  He testified here.

15         What became absolutely clear from that testimony and

16   from the evidence that we established was that shortly after

17   the SlimAmerica situation, Sarcona met with Massabni and

18   DiBiano to set up a different company, National LipoBan

19   Clinic, Inc., that the letter that was sent out from Dr. Maya,

20   quote-unquote sent out, had been drafted by Sarcona, and that

21   letter was identical to the one that was sent out after George

22   Forgione became part of this.

23         What that created for us was the undeniable ability

24   to tell this jury that Forgione was the after-included

25   element, and, in fact, it was Sarcona who was the brains

1   behind this, as opposed to the reverse.  Without that, we had

2   the possible defense of the fact that Forgione was running all

3   of this and Sarcona was only hired to do advertising, knowing

4   nothing at all about it.

5          But what we heard from DiBiano were things like

6   Sarcona actually came up with the name of the product.  We

7   learned that Sarcona had written that letter for Dr. Maya even

8   before Forgione had met with Dr. Maya.  So we knew about that

9   Maya-Sarcona relationship that existed even before Forgione

10  came on.  The ability to put Sarcona in charge of the

11  organization and in charges of the scheme we thought was

12  ultimately invaluable.

13         In addition, there was a question of whether or not

14  there would be a suppression hearing.  One of the things that

15  the United States had thought about, and no one is ever sure

16  what's going to happen on any motion or anything because we're

17  now looking back with hindsight, but at the time what happens

18  if.  At the time Forgione said to us that any of the documents

19  or any of the matters you recovered pursuant to that search

20  warrant if suppressed by court as to him I will consent to

21  bringing in.  He would have been able to allow us to bring in

22  evidence which potentially could have been suppressed.  I

23  didn't really think we had -- excuse me.  I didn't think there

24  was anything wrong that should have caused it, but it was good

25  to have the failsafe.

1    We looked at the trial.  Up until the end of the

2    trial, Forgione was on standby to testify for us.  Candidly, I

3    believe that Mr. Sarcona shot himself in the foot on his own

4    cross-examination.  I think that we had presented an excellent

5    case.  But one always has doubts about what a jury is seeing.

6    And because of that, we continually spoke to Mr. Futerfas, who

7    was coming down if we needed him to be with Mr. Forgione, who,

8    in fact, had prepped Mr. Forgione, and if there were things

9    that had been challenged by Sarcona at trial, we were ready to

10   call Forgione if needed.

11   There were times when I wasn't sure that all of the

12   documents which I wanted to get in, and candidly I believe

13   should have appropriately gone in and did go in, there's

14   always a chance that maybe they won't be admitted.  Maybe they

15   won't be stipulated to, maybe they won't be admitted.

16   Forgione stood ready to come in and testify as to those

17   documents for their admissibility.

18   So even as we went to the sentencing hearing, there

19   were issues of loss and other issues that may have come

20   forward.  The United States had spoken to counsel.

21   Mr. Forgione was ready to testify for us if there were issues.

22   I will tell the Court candidly that as it got closer, having

23   done the trial, realized what evidence we had and having

24   worked through it, we didn't need to call him, but he was

25   available to us if we did.

```
 1            The Government looks at Mr. Forgione's activity in
 2     this case as clearly culpable.  We're not in any way excusing
 3     his activity, but we're distinguishing his culpability and
 4     likening him to the David Massabni, who the Court may recall
 5     had been the original partner with DiBiano and Sarcona who had
 6     a mental illness, and saying that Sarcona latched on to one
 7     more -- forgive me, Mr. Forgione -- but one more dupe.  He
 8     took this Defendant's vulnerability, his bravado and his
 9     willingness to self-aggrandize and let him think that he was
10     actually running something, when, in fact, it was Sarcona.
11            And Sarcona had done that in other cases like
12     SlimAmerica.  The problem is Forgione didn't really understand
13     that.  Forgione actually thought he was in charge of
14     something.  The scheme was really Sarcona's.
15            So in coming to a conclusion as to what we think is
16     appropriate, we looked at the fact that he was -- he did plead
17     guilty, he did not falsely testify before this court, he met
18     with the United States for I can't tell the Court how many
19     hours, but days in trying to go through things.
20            I will tell the Court one more.  In addition to the
21     fact that he's agreed to forfeiture a host of things, and
22     hopefully that forfeiture will be part of the Court's final
23     order.  But in addition, there's one more point.
24            During the grand jury presentation, Sarcona had
25     presented to us, and we heard a little bit about it at the
```

Page 12

1    trial, a letter from a postal inspector.  The Government's

2    thought was, and we would have gone against the wall for it,

3    was that this is something that Sarcona had made up.  To his

4    credit, Forgione told us that he had been worried about the

5    exaggerated claims of Sarcona, and this was his way of trying

6    to cut back on what Sarcona was advertising to the public.  He

7    had been concerned about it.  Not so concerned that he stopped

8    it, but trying to cut back a little bit.  He told us that he

9    and Sarcona had laughed about it, that Sarcona knew this was

10   all fake.

11         He told us about another document that on the face of

12   it seemed to be a problem.  Sarcona had brought forth a -- in

13   the grand jury and here at trial a document which purported to

14   be a -- an agreement between Sarcona and Forgione from the

15   get-go in which Sarcona was only going to be an adviser and

16   that Forgione was the real owner of this.  Forgione told us

17   that that document was created during the grand jury

18   investigation, and we looked at the four corners of it and we

19   discovered things.

20         We discovered that one of the corporations, National

21   Pharmaceuticals, which had been referenced in it, hadn't been

22   in existence at the time the document was signed.  We looked

23   at numbers and realized that the case literally had been taken

24   down in October of 2004, and although it was a five-year

25   agreement which should have gone into '05, the reason there

Page 13

1    were no numbers in '05 was because there was no business in

2    '05.  Yet, in theory, five years earlier, four years earlier,

3    they wouldn't have known that.  It was obviously a document

4    that had been created afterwards.  We were able to

5    cross-examine Sarcona on that because of Mr. Forgione having

6    told us that.

7            I don't make any excuses for his conduct.  What he

8    did in deceiving people was horrible.  But we value the fact

9    that he aided us in trying to correct that.  We believe, if

10   the Court please, that a 5K1 application and a reduction of

11   sentence is appropriate, and we suggest to the Court a period

12   of incarceration of 60 months.

13           Thank you.

14           THE COURT:  Thank you.

15           MR. FUTERFAS:  May I be heard, Your Honor?

16           THE COURT:  Yes.

17           MR. FUTERFAS:  Your Honor, we appreciate the

18   Government's remarks.  It was quite eloquent, and I'll try not

19   to be repetitive, particularly at this late hour on a Friday

20   afternoon, and I am sensitive to that.

21           I would like to tell Your Honor a little bit about

22   his cooperation, at least from our perspective, and about his

23   life and his character and what Mr. Forgione is about and what

24   I've learned that he's about.

25           He did begin cooperating almost immediately from the

1   time that he was transferred from New York here.  We discussed

2   it.  It was something that was readily in his mind from the

3   beginning, and immediately went to work to make that happen.

4   He began cooperating in January 2008, and there was not a plea

5   until December of 2008, a period of almost 12 months of

6   working with the Government, meetings at a room here or across

7   the street called the Igloo, where all the documents were.

8   These were intensive two-, three-, sometimes four-day

9   sessions, where Mr. Forgione would sit with the prosecutor and

10  the agents and go over document by document and explain them.

11          One of the things I had wanted to tell Your Honor in

12  my remarks that Mr. Baron covered is that not only was

13  Mr. Forgione truthful and forthright, but he willingly

14  provided information that hurt him, documents that either he

15  created or a document that one could have easily put on

16  Mr. Sarcona, he wouldn't do that.  And when asked a question

17  about certain items or certain information, and Mr. Forgione

18  readily say, no, that wasn't Frank, that was me, or this was a

19  document I created and that wasn't Mr. Sarcona.

20          So it was not just a question of I'm going to

21  cooperate and I'm going to do everything I can to aid in the

22  prosecution of another, which is obviously the standard, but

23  it was more than that.  It was to be absolutely down the

24  middle, objectively truthful where it hurt and where it didn't

25  hurt.  And that played out repeatedly during the course of our

Page 15

1    interaction with the Government and was very important.  I

2    think it was important for all of us who observed this go

3    forward.

4            As Mr. Baron stated, putting together a timeline of

5    these events was difficult, and Mr. Forgione was able to put

6    things together and piece documents together that may have

7    appeared out of context and explain the factual content and

8    context for the document.

9            And during this time, Your Honor, Mr. Forgione was at

10   Gun Club Road, and that is not a -- as Your Honor is well

11   aware, that is not an easy facility.  Mr. Sarcona was

12   actually -- and there is a federal dorm there in Gun Club Road

13   which is a little bit better.  It's generally for federal

14   inmates.  But Mr. Sarcona was there; Mr. Forgione was not.  He

15   was in the part of that facility which housed the state

16   prisoners.  And so he was in with very, very violent

17   individuals, and this was a very difficult experience.

18           I've been doing this about 20 years and represented

19   people in all kinds of federal courts and cases, and this is

20   a -- this was a serious facility, a dangerous facility, and

21   Mr. Forgione, the fact that he was there and that Mr. Sarcona

22   was in a slightly better area, it didn't matter.  He was going

23   to be there so he was available to the Government here, he was

24   available on a moment's notice to come over and meet, and it

25   was a hardship.  There were threats.  There was problems

1    there.  This is a dangerous place.  And that's something that

2    he made no bones about and willingly lived with to make sure

3    that the Government's case was -- that he was available to the

4    Government at all times.

5              He provided leads to additional witnesses to the

6    Government, as Mr. Baron stated, and particularly Michael

7    DiBiano.  I think he's help streamline the trial in terms of

8    the proof.  And so Your Honor's heard all that.

9              He was prepared to testify.  I came down and worked

10   with him for days, and up until literally mid trial, when the

11   Government advised that they didn't need him, he was prepared

12   to go forward.  So we spent -- we worked for days prior to the

13   trial to make sure he was prepared to testify, had numerous

14   meetings with the Government to make sure he was ready to go

15   should they need him.  And that was even in anticipation not

16   just of the direct case, but after Mr. Sarcona testified, or

17   when it became clear that he was going to testify, where the

18   Government would need Mr. Forgione in rebuttal, and they

19   apparently made the decision they did not.  But he was ready

20   and available to testify, and there was significant

21   preparation for that.

22             Mr. Forgione's commitment to cooperate went beyond

23   the information he provided about this particular case.

24   Mr. Forgione would write me letters and otherwise contact me

25   telephonically about other information that he learned while

1    at Gun Club Road, and some of that information I believe was

2    transmitted to the FBI, both agents meeting with him and other

3    individuals that he knew there who met with the FBI.

4              There's one of those events I recount in the memo to

5    Your Honor where an individual had spoken to Mr. Forgione

6    because that inmate had learned of a plot to kill a family for

7    insurance money.  And Mr. Forgione spoke to that individual at

8    length and said to him, you have to go to the FBI with this,

9    you cannot sit with this information and do nothing with it.

10   And eventually that person did reach out to the FBI and did

11   speak to the FBI and wrote a letter to Mr. Forgione which

12   we've -- which is in exhibit C in which he writes to

13   Mr. Forgione -- this was back in July of '08, quote, "thanks

14   for helping me to do the right thing in regards to my turning

15   to the Feds.  You were right.  Morally it was the right thing

16   to do.  I also want to thank you for steering me toward good

17   and just, being the one person everybody seems to be able to

18   turn to with their problems.  You have been like a father with

19   your caring and compassion.  I will miss you and pray for you.

20   And with that being said, I wish you well and stay safe."

21             This was the inmate who had confided in Mr. Forgione,

22   and Mr. Forgione had strongly suggested that he contact the

23   FBI about this.

24             There were other events.  There were dangerous plots

25   being hatched which he also brought to my attention and in an

1    effort to bring it to the federal government's attention.

2          In addition, there were foreign documents that the

3    Government needed that were in offshore accounts or offshore

4    banks.  The only one who could get those documents was

5    Mr. Forgione.  He executed the paperwork, he had me make the

6    phone calls, whatever had to be done to get those documents.

7    We retrieved those documents.  We made them immediately

8    available to the Government.  Those documents helped map out

9    money flows with respect to this crime.

10          And significantly, those documents did not help

11   Mr. Forgione, they hurt Mr. Forgione but he got them anyway,

12   because it was through those documents that some of these

13   forfeitures that he's agreed to and that have occurred here

14   took place, because those documents showed that monies to

15   purchase a house, that he used to purchase a house, monies

16   that were originated from the activities in the 1990s before

17   this case were commingled with funds that came from National

18   Pharmaceuticals or from LipoBan, and because of that

19   commingling it created a forfeiture situation for that house

20   and made that house subject to forfeiture.

21          So he went out to obtain documents so that the

22   Government would have a complete picture of the financial

23   structure.  And in doing so it affected him negatively with

24   respect to that, but did it anyway.  And we made those

25   documents available to the Government, and as we've put forth

Page 19

1    to Your Honor in the memorandum, he has forfeited perhaps --

2    he has forfeited literally everything he has.

3          He came to the West Palm Beach area in about 1995,

4    1996, having been a successful contractor in New York.  He

5    came down here with savings, he came down here with monies

6    from the sale of homes in New York having nothing to do with

7    this case.  He had a significant nest egg prior to ever

8    meeting Frank Sarcona, prior to having anything to do with

9    this case.  He is now destitute, he is now penniless.

10         The home he purchased from sales of homes in New York

11   has been forfeited to the Government.  Why?  Because he ran

12   LipoBan, he ran National Pharmaceuticals, he ran some of these

13   businesses out of that home, making it subject to forfeiture;

14   lost it.

15         The other house he brought for his sons, he

16   intermingled those monies.  That's been forfeited.  Money that

17   he had in Ukraine, forfeited; a car, forfeited; a boat,

18   forfeited; cashier's check and $25,000 forfeited; other cash

19   that was seized, forfeited.  Almost a million dollars.  He is

20   penniless, he's destitute.  Everything that he's had is

21   forfeited.  He's done it willingly.  He's signed every

22   document he had to sign, every document that was required to

23   forfeit any of these items.

24         The money in the Ukraine, we crafted the document,

25   the release, for the Government that they needed so with his

Page 20

1    signature that they could take that document, present it and

2    try to recover those funds for the Government.  That also

3    shows his commitment to cooperation, his commitment to right

4    the wrongs that he feels he's done in this case and try to

5    make amends here.

6           Now, if I may, Your Honor, at this late hour, tell

7    you a few minutes about his character and who he is.  It has

8    been a privilege to represent Mr. Forgione.  His two sons are

9    in the courtroom, his brother Larry is in the courtroom.

10          In life, we meet people who talk a good talk but

11   don't -- their deeds don't necessarily follow what they say,

12   and in life experience that happens a lot.  In Mr. Forgione's

13   case, it's a very unusual case where he doesn't talk the talk,

14   he walks the walk.  He's a very religious man.  And prior to

15   this case, not when it was in his interest to say, okay, I'm

16   now going to turn over a new leaf, I'm now going to do

17   something good because I've learned from my wrongs, before he

18   ever met Frank Sarcona, before 2000, before he ever got in

19   this case what did he do with his life, and what kind of

20   people did he help?  And indeed not just then, but before

21   there was ever a prosecution in this case, which is really

22   2007 or 2008.  And I think if you look at that conduct, we get

23   to see the essential nature of the individual that is before

24   Your Honor.  I'll give you some highlights, and they are in

25   the memo.

Page 21

1        For example, Michelle Stasack (phonetic), a woman

2   who's known him for more than 40 years, says that he's always

3   helped lend a hand to others.  He responded to 9/11 by

4   participating in rescue efforts and came to the aid of

5   Hurricane Katrina victims.

6        Well, I was in New York on 9/11.  There are a lot of

7   people who helped out in 9/11.  What does that mean when she

8   says that?  Well, I'll tell you what it means, and it's in the

9   other letters.  He was in Boca Raton.  He got in his car and

10  he drove to New York, and then he spent weeks in New York

11  helping out.  So that's different than a lot of people who

12  were there who were on the scene.  Here he was in Boca Raton,

13  gets in his car, leaves and drives and goes and spent weeks

14  and weeks helping out there before finally things got under

15  control and he could return.

16       Katrina was the same situation.  It's in the letters.

17       How does an individual -- you know, you could

18  sometimes, Your Honor, see -- tell an individual through their

19  family.  Well, the sons are here.  Your Honor has heard about

20  them before.  He's raised two wonderful sons.  Douglas was in

21  the Coast Guard for six years and recently I guess retired or

22  left the Coast Guard after being a chief gunnery officer and a

23  mate on one of the Coast Guard ships and was involved in

24  protecting New York harbor for some time before he was

25  stationed down here.  Brandon just finished University of

Page 22

1    Miami law school, was very high in his class, I think third in

2    his class, now working in this area in a law firm.

3          So how does that -- who is the character of someone

4    who, despite the mental disabilities, manages to do that?

5    Well, Brandon writes, "he has been very influential in my

6    life, as well, always pushing me to better myself and

7    encourage me to be -- to work hard.  In fact, I attribute much

8    of my success to his efforts.  Ever since I was little, my

9    father has told me to stand up for what is right, to never

10   lose confidence in the face of adversity, not just by word,

11   but by action."

12         Douglas writes, "he is a religious man who has always

13   tried to instill in my brother and I the qualities of respect,

14   caring and tolerance while we were growing up.  I've always

15   looked up to my father and still do so to this day."

16         Julie Forgione -- this is Mr. Forgione's sister in

17   law -- says, "after Katrina, George hosted a family and

18   offered them assistance until they were on their feet.  He was

19   a 9/11 volunteer in New York City, arriving from Florida

20   immediately after the tragedy.  This is typical of George."

21         And then, of course, we have what does he do when he

22   moves from New York here?  He founds Angels Retreat.  Your

23   Honor heard about it a year ago or so, maybe longer in my bail

24   application, but it's worth repeating, albeit briefly.  Again,

25   deeds, not words.  Took $160,000 of his own money, bought two

1    buildings, commercial buildings, in Riviera Beach, turned them

2    into a homeless shelter, spent about $300 a month of his own

3    money to make that shelter run and provide supplies and food.

4         The letter from the Mayor of the City of Riviera

5    Beach in 1996 is in exhibit A to the memorandum, which writes

6    about him doing this, using the properties for the homeless,

7    the drug and alcohol rehabilitative patients and other

8    citizens.  In addition to paying all property taxes, city

9    taxes, electricity, fuel and other related expenses,

10   Dr. Forgione has never received a dime from any outside

11   sources, and he does not charge rent.

12        There's no reason for him to do these things except

13   by the fact that he believed that doing deeds is important.

14        Since his incarceration, that commitment has

15   continued.  In exhibit B to this is a calendar.  This is just

16   one page.  I have dozens and dozens of pages like it, because

17   I have his entire calendar in my office.  But this is one page

18   from his daily calendar, and it is filled every day with

19   English as a Second Language, fellowship, Bible study,

20   religious classes that he was holding for inmates.  Inmates at

21   Gun Club Road would confide in him, they would repent to him,

22   they would tell him things they did that were extraordinary.

23        In fact, one of the reasons he didn't leave Gun Club

24   Road or we didn't make an application to leave is because at

25   one point I said to Mr. Forgione, I said, George, we can move

1    you to Miami.  It's a much better facility, Miami FDC.  You

2    can be moved there.  And notwithstanding the difficulties

3    here, he said, I can't now.  I'm involved in a class.  There

4    are people who are relying on me in this class who I'm working

5    with and who are, you know, confessing or telling me things

6    they've done, and I think I'm helping people.  Let me tell you

7    when would be a good time.  And he stayed at least another two

8    or three month there that he did not have to, because we could

9    have asked the marshals and asked the Government to move him

10   to Miami because of that work that he was doing.

11         When he got to Miami, there were two individuals that

12   he helped, one of them who is suffering from a stroke and

13   literally in his cell unable to care for himself at all.

14   Mr. Forgione dressed him, bathed him, took care of this

15   individual.  The guards in the Miami facility saw what he was

16   doing and finally took an interest in this person, and he was

17   eventually moved to a hospital-type facility.

18         And he's done these deeds in his life in jail

19   suffering from a significant mental disability, as Your Honor

20   is aware.  Nonetheless, whether he received his medication in

21   jail -- and this is an important point, I think, Your Honor,

22   that whether he received his medication in jail -- if he

23   received his medication, certainly it made him feel better.

24   He was a -- his mood was better.  But whether he received it

25   or not, he is a model inmate, absolutely model inmate.

Page 25

1    Completed a life skills class, which apparently very few

2    inmates complete.  Absolutely a model inmate.  And the reason

3    I say that is because the presentence report talks about his

4    mental difficulties and diagnoses, and I wouldn't want the

5    Bureau of Prisons to make some kind of recommendation to

6    anything other than the most lenient facility that he would

7    otherwise go to because of that.  There are times he received

8    medication and a significant amount of time, both here and in

9    Miami, he received no medication, and nonetheless an absolute

10   model inmate.  I want to make that clear.

11          He's 56 years old, Your Honor, and takes full

12   responsibility for what he did in this case.  But he has also

13   lived a life of good works, good deeds, of doing for others

14   and helping others.

15          And so my application to Your Honor would be -- and I

16   know the Government has recommended to Your Honor 60 months.

17   I don't want to be presumptuous and ask Your Honor for maybe a

18   more lenient sentence than that, but I'm going to do that

19   anyway.  If Your Honor feels that it's responsible and it's in

20   with Your Honor's discretion to do that, if Your Honor's so

21   inclined to take into account his cooperation, his total

22   forfeiture of everything, his life works, his good deeds, I

23   think he merits significant leniency from Your Honor.

24          I appreciate Your Honor listening to me at this time

25   on a Friday.  Thank you.

Page 26

1          THE COURT:  My pleasure.  Thank you.

2          Does Mr. Forgione wish to say anything?

3          THE DEFENDANT:  No.

4          THE COURT:  Okay.  Anything else, Mr. Baron?

5          MR. BARON:  No, Your Honor.  Only to ask the Court to

6     make a statement including those things in the preliminary --

7     the amended preliminary order that you signed the other day as

8     part of a sentence.

9          Thank you.

10          THE COURT:  Thank you.

11          Anything else, Counsel?

12          MR. FUTERFAS:  No, thank you, Your Honor.

13          THE COURT:  All right.  The Court has considered the

14     statements of all the parties, the presentence report, which

15     contains the advisory guidelines, as well as the statutory

16     factors set 18 U.S.C., Section 3553(a)(1) through (7).

17          The Court is going to grant the Government's motion

18     for a downward departure based upon the Defendant providing

19     substantial assistance to the Government.

20          The Court finds the Defendant is not able to pay a

21     fine as well as restitution, so a fine will not be imposed.

22          Before I actually pronounce the sentence, I just want

23     to kind of put things in a little bit of a perspective.  I

24     certainly agree that Mr. Sarcona is more culpable than

25     Mr. Forgione in this case primarily because Mr. Forgione --

Page 27

1    excuse me, Mr. Sarcona had a history of civil violations of

2    this type of law.  He has a history of engaging in these kind

3    of frauds.  Never prosecuted criminally, and it took a

4    criminal prosecution to get him sort of off the streets, so to

5    speak.  And Mr. Forgione doesn't have that in his background,

6    and I agree that Mr. Sarcona was sort of the brains behind the

7    operation, and he got a pretty significant sentence for what

8    he did.

9            But when we came -- I think it was two weeks ago that

10   Mr. Sarcona was sentenced, or thereabouts, two or three weeks

11   ago.  When we walked into the courtroom for Mr. Sarcona's

12   sentencing, he was looking at a guideline range before we had

13   our hearing of life in prison with the same criminal history

14   that Mr. Forgione has.  From being involved in the same scheme

15   as Mr. Forgione was, he was looking at life in prison

16   guidelines.

17           Now, I reduced that by only two levels, and he was

18   looking at, after I sustained an objection to him not getting

19   a four-level enhancement for being a manager or organizer,

20   which I could have, but I thought it was overkill, he was

21   looking at a guideline range of 324 to 405 months.

22           Now, some of that was self-imposed, because, what did

23   he do?  He didn't plead guilty.  So that's three levels that

24   he imposed on himself.  And then he came into court and

25   testified falsely.  So he imposed five levels on himself that

1    if he had pled guilty like Mr. Forgione did, if he didn't

2    perjure himself, take those five levels away and he would have

3    been at a level 36, and he would have been looking at a

4    guideline range of 188 to 235 months if he had pled guilty to

5    what he did.  And I sentenced him to 240 months.

6          So if Mr. Sarcona had pled guilty straight up to the

7    indictment, didn't perjure himself, he would have been looking

8    at 188 to 235 months.  More culpable, deserves a harsher

9    sentence.

10          Now, did Mr. Forgione cooperate with the Government?

11   Yes.  Did he plead guilty?  Yes.  Did he not perjure himself?

12   Yes.  Did he do lots of good things in his life before this?

13   Yes.  But he negotiated a plea agreement that maxed him, maxed

14   him at 96 months max, when Sarcona, who he's involved with,

15   was looking at 188 months, same thing.  So Mr. Forgione has

16   already gotten a significant break in this case by the

17   negotiating with the Government to a maximum of 96 months, and

18   now he's getting a 5K on top of that, another three years the

19   Government's asking to reduce.

20          So he's looking at five years; Sarcona got 20.

21   Sarcona deserved 20.  That's why I gave him 20.  Mr. Forgione

22   doesn't deserve 20, but I'm not sure he deserves less than

23   five when you look at the whole picture.  When you look at

24   Sarcona got 20, he's getting five.  That's what I -- the

25   Government's asked me for.  They were both involved in this

1   scheme.  They both created the same loss to all those people

2   out there.  And Sarcona caused a lot of the harm to himself,

3   but I think the five years is reasonable looking at

4   everything.  I know that's disappointing to Mr. Forgione and

5   to his counsel, but I think the Government's -- again, the

6   Government's been very fair to Mr. Forgione in this case when

7   he got maxed at 96 months for something that could have been

8   25, 30 years if the Government had said, no, we're going to go

9   with the allegations, just like Sarcona.

10          So pursuant to the Sentencing Reform Act of 1984,

11   it's the judgment of the Court that the Defendant, George

12   Forgione, is hereby committed to the custody of the Bureau of

13   Prisons to be imprisoned for a term of 60 months.  This term

14   consists of 60 months as to count 1 and terms of 36 months as

15   to -- a term of 36 months as to count 2, to be served

16   concurrently with each other.

17          I'm sorry.  That works, right?  Sixty as to 1 and 36

18   as to 2 concurrent?

19          PROBATION OFFICER:  Yes.

20          MR. FUTERFAS:  Yes, Your Honor.

21          MR. BARON:  Yes.

22          THE COURT:  Are we going to agree to restitution, or

23   are we going to have a hearing?

24          MR. BARON:  Your Honor, may I ask for the May 14th

25   date that we set for Sarcona?  I am hopeful that I will have a

Page 30

1    pleading before you.  I don't believe that we're going to be

2    able to do anything of any significance, but I'm going to

3    still try with that website.

4            THE COURT:  What day was that?

5            MR. BARON:  Friday the 14th, I believe.

6            THE COURT:  May 14th at 2:00 o'clock.

7            It is further ordered that pursuant to 18 U.S.C.,

8    Section 3664(d)(5), the victims' losses are not yet

9    ascertainable.  Therefore, the Court shall set a date for the

10   final determination of the victims' losses not to exceed 90

11   days after sentencing, and the Court will schedule that

12   hearing for May 14th, 2010, at 2:00 p.m.

13           Upon release from imprisonment, the Defendant shall

14   be placed on supervised release for a term of three years.

15   This term consists of three years as to count 1 and 2, to be

16   served concurrently.

17           Within 72 hours of his release, the Defendant shall

18   report in person to the probation office in the district where

19   he's released.

20           While on supervised release, the Defendant shall not

21   commit any crimes, he shall be prohibited from possessing a

22   firearm or other dangerous devices, and he shall not possess a

23   controlled substance.

24           In addition, he shall comply with the standard

25   conditions of supervised release that have been adopted by

Page 31

```
 1    this court, as well as the following special conditions:
 2              Mental health treatment, financial disclosure
 3    requirement, self-employment restriction and permissible
 4    search, as noted in Part G of the presentence report.
 5              The Defendant shall also cooperate in the collection
 6    of DNA.
 7              The Defendant shall immediately pay the United States
 8    a special assessment of $100 as to each of counts 1 and 2, for
 9    a total of $200.
10              So the total sentence is 60 months' imprisonment,
11    three years' supervised release and a $200 special assessment.
12              Now that sentence has been --
13              And the Court orders forfeiture of the Defendant's
14    right, title and interest to certain property consistent with
15    the preliminary order of forfeiture.
16              Is that a final order or preliminary order?
17              MR. BARON:  There's a preliminary.  A final based on
18    Your Honor's announcement now will be prepared when Mr. Lester
19    gets back.
20              THE COURT:  All right.  So if you can submit a final
21    order of forfeiture within three days, business days of this
22    proceeding.
23              MR. FUTERFAS:  Your Honor, may I ask for Your Honor
24    to -- when he gets out of jail he's going to be living with
25    his brother in Long Island.  So if Your Honor -- I don't know
```

Page 32

1    if it's Your Honor's practice or not to recommend a region or

2    a designation.

3              THE COURT:  I'll recommend whatever you request.

4              MR. FUTERFAS:  Well, we're hoping he will -- and we

5    expect that he would be eligible for a camp.  So we would ask

6    Your Honor to recommend Allenwood camp, which is in

7    Pennsylvania.  It's in the northeast region.

8              THE COURT:  I'll make that recommendation.

9              MR. FUTERFAS:  Thank you, Your Honor.

10             THE COURT:  Okay.  Do you want me to recommend the

11   drug program while he's in custody?

12             MR. BARON:  Your Honor, Mr. Lester, who is the

13   assistant on this case as far as forfeiture, will be in Mexico

14   for the next two weeks on behalf of the United States.

15             THE COURT:  Make it within -- in three weeks of

16   today's proceeding.  Okay?

17             MR. BARON:  Thank you.

18             He's teaching the Mexican authorities how to proceed

19   and change their legal system.

20             THE COURT:  Maybe he can go visit Dr. Maya while he's

21   down there.

22             MR. FUTERFAS:  Yes, if Your Honor would make a

23   recommendation for the drug program.

24             THE COURT:  I'll make that recommendation, as well.

25             MR. FUTERFAS:  Thank you, Your Honor.

Page 33

1          THE COURT:  All right.  Mr. Forgione, you have the

2    right to appeal the sentence that's been imposed.  If you wish

3    to file an appeal, you must file your notice of appeal within

4    10 days from the date judgment's entered in this case.

5          And if you're unable to pay for the cost of an

6    appeal, you may seek leave to file the appeal in forma

7    pauperis.

8          And I guess I didn't actually ask whether, now that

9    sentence has been imposed, does the Defendant or his counsel

10   object to the Court's findings of fact or the manner in which

11   sentence was pronounced.

12          MR. FUTERFAS:  I'm sorry, Your Honor?

13          THE COURT:  Do you have any objections to the

14   sentence or the findings of the Court?

15          MR. FUTERFAS:  No, I do not, Your Honor.

16          THE COURT:  Does the Government?

17          MR. BARON:  No, Your Honor.

18          THE COURT:  Okay.  All right.  Mr. Forgione, good

19   luck to you, sir.

20          THE DEFENDANT:  Yes.

21          THE COURT:  Thank you.

22          All right.  With respect to the supervised release,

23   the term of supervised release will be three years as to

24   count 1 and 1 year as to count 2 to be served concurrently

25   with each other.

Page 34

1          All right.  Thank you.  I apologize.

2      (Proceedings concluded.)

3                      *  *  *  *  *

4                      CERTIFICATE

5      I, Stephen W. Franklin, Registered Merit Reporter, and

6  Certified Realtime Reporter, certify that the foregoing is a

7  correct transcript from the record of proceedings in the

8  above-entitled matter.

9      Dated this 17th day of NOVEMBER, 2010.

10

11      /s/Stephen W. Franklin
   _____
12  Stephen W. Franklin, RMR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25

**A**

ability (2) 8:23 9:10
able (7) 8:7 9:21 13:4 15:5 17:17 26:20 30:2
above-entitled (1) 34:8
absolute (1) 25:9
absolutely (4) 8:15 14:23 24:25 25:2
accompanied (1) 6:16
account (1) 25:21
accounts (1) 18:3
accurate (1) 4:4
Act (1) 29:10
action (1) 22:11
actions (1) 6:22
activities (1) 18:16
activity (2) 11:1,3
addendum (3) 4:16,17 6:3
addition (6) 9:13 11:20,23 18:2 23:8 30:24
additional (1) 16:16
admissibility (1) 10:17
admitted (2) 10:14,15
adopt (2) 5:12,17
adopted (1) 30:25
adversity (1) 22:10
advertising (2) 9:3 12:6
advise (1) 7:14
advised (1) 16:11
adviser (1) 12:15
advisory (1) 26:15
afternoon (8) 2:2,3,4,8,12,13,16 13:20
after-included (1) 8:24
agent (2) 2:10 6:16
agents (2) 14:10 17:2
ago (3) 22:23 27:9,11
agree (4) 3:6 26:24 27:6 29:22
agreed (3) 8:5 11:21 18:13
agreement (4) 4:1 12:14,25 28:13
aided (1) 13:9
akin (1) 7:16
Alan (2) 1:18 2:13
albeit (2) 6:15 22:24
alcohol (1) 23:7
alert (2) 5:1 6:11
alerting (3) 4:24 5:22 6:4
allegations (1) 29:9
Allenwood (1) 32:6
allocation (1) 4:1
allow (1) 9:21
amended (2) 4:3 26:7
amends (1) 20:5
America (2) 1:3 2:6
amount (1) 25:8
Angels (1) 22:22
announcement (1) 31:18
anticipation (1) 16:15
anyway (5) 3:11 7:17 18:11,24 25:19
apologize (1) 34:1
apparently (3) 6:23 16:19 25:1
appeal (5) 33:2,3,3,6,6
appearances (2) 1:14 2:7
appeared (1) 15:7
application (4) 13:10 22:24 23:24 25:15
appreciate (2) 13:17 25:24
appropriate (1) 11:16 13:11
appropriately (1) 10:13
area (3) 15:22 19:3 22:2
arraigned (1) 7:4
arrested (2) 6:13,14
arriving (1) 22:19
ascertainable (1) 30:9
asked (4) 14:16 24:9,9 28:25
asking (1) 28:19
assessment (2) 31:8,11
assistance (2) 12:18 26:19
assistant (2) 29:12,13
attention (3) 4:16 17:25 18:1
Attorney (1) 2:9
Attorney's (1) 1:15
attribute (1) 22:7
AUSA (1) 1:15
Australian (1) 1:16
authorities (1) 32:18
available (7) 10:25 15:23,24 16:3,20 18:8,25
Avenue (3) 1:16,19 2:14
aware (4) 5:9 7:23 15:11 24:20

**B**

B (1) 23:15
back (6) 8:8 9:17 12:6,8 17:13 31:19
background (1) 27:5
bail (1) 22:23
banks (1) 18:4
Baron (23) 1:15 2:3,8,8,19 3:1,17,19 4:6 6:10
  7:10 14:12 15:4 16:6 26:4,5 29:21,24 30:5
  31:17 32:12,17 33:17
based (3) 6:8 26:18 31:17
bathed (1) 24:14
Beach (6) 1:7,17,22 19:3 23:1,5

**B**

began (1) 14:4
beginning (1) 14:3
behalf (1) 32:14
belief (1) 7:25
believe (9) 5:25 6:12 7:3 10:3,12 13:9 17:1 30:1,5
believed (2) 8:3 23:13
better (6) 15:13,22 22:6 24:1,23,24
beyond (2) 3:11 16:22
Bible (1) 23:19
bit (5) 11:25 12:8 13:21 15:13 26:23
boat (1) 19:17
Boca (2) 21:9,12
bones (1) 16:2
Booker (1) 7:15
BOP (2) 6:15 18
bought (1) 22:25
brains (2) 8:25 27:6
Brandon (2) 21:25 22:5
bravado (1) 11:8
break (1) 28:16
briefly (1) 22:24
bring (1) 9:21 18:1
bringing (1) 9:21
brother (3) 20:9 22:13 31:25
brought (5) 5:22,24 12:12 17:25 19:15
buildings (2) 23:1,1
Bureau (2) 25:5 29:12
business (2) 13:1 31:21
businesses (1) 19:13

**C**

C (1) 17:12
calendar (3) 23:15,17,18
call (3) 2:1 10:10,24
called (1) 14:7
calls (1) 18:6
camp (2) 32:5,6
candidly (3) 10:2,12,22
car (3) 19:17 21:9,13
care (2) 24:13,14
caring (2) 17:19 22:14
case (26) 1:2 2:5,6 7:23,24 10:5 11:2 12:23 16:3
  16:16,23 18:17 19:7,9 20:4,13,13,15,19,21
  25:12 26:25 28:16 29:6 32:13 33:4
cases (2) 11:11 15:19
cash (1) 19:18
cashier's (1) 19:18
caused (2) 9:24 29:2
cell (1) 24:13
certain (3) 14:17,17 31:14
certainly (2) 24:23 26:24
CERTIFICATE (1) 34:4
Certified (1) 34:6
certify (1) 34:5
challenged (1) 10:9
chance (1) 10:14
change (1) 32:19
character (3) 13:23 20:7 22:3
charge (3) 9:10 11:13 23:11
charges (3) 3:6 8:1 9:11
check (1) 19:18
chief (1) 21:22
citizens (1) 23:8
city (3) 22:19 23:4,8
civil (1) 27:7
claims (1) 12:5
class (5) 22:1,2 24:3,4 25:1
classes (1) 23:20
clear (3) 8:15 16:17 25:10
clearly (1) 11:2
Clematis (1) 1:22
Clinic (1) 8:19
closer (1) 10:22
Club (5) 15:10,12 17:1 23:21,23
Coast (3) 21:21,22,23
collection (1) 31:5
come (4) 4:8 10:16,19 15:24
coming (1) 10:7 11:15
commercial (1) 23:1
commingled (1) 18:17
commingling (1) 18:19
commit (1) 30:21
commitment (4) 16:22 20:3,3 23:14
committed (1) 29:12
company (1) 8:18
compassion (1) 17:19
complete (1) 18:22 25:2
Completed (1) 25:1
comply (1) 30:24
concerned (2) 12:7,7
concluded (1) 34:2
conclusion (1) 11:15
concurrent (1) 29:18
concurrently (3) 29:16 30:16 33:24
condition (5) 4:15,18,22 5:7,10
conditions (3) 5:2 30:25 31:1
conduct (2) 13:7 20:22
confessing (1) 24:5

**C**

confide (1) 23:21
confided (1) 17:21
confidence (1) 22:10
consent (1) 9:20
consider (2) 5:6 6:20
considered (1) 26:15
consistent (1) 31:14
consists (2) 29:14 30:15
conspiracy (1) 9:4
contact (2) 16:24 17:22
contains (1) 26:15
content (1) 15:7
context (2) 15:7,8
continually (1) 10:6
continued (1) 23:15
contractor (1) 19:4
control (1) 21:15
controlled (1) 30:23
cooperate (5) 8:5 14:21 16:22 28:10 31:5
cooperating (2) 13:25 14:4
cooperation (3) 13:22 20:3 25:21
copyrighter (1) 8:2
corners (1) 12:18
corporations (1) 12:20
correct (2) 13:9 34:7
cost (1) 33:5
count (7) 21:22 10:20 26:11 29:5 33:9
count (8) 4:2,7,9 29:14,15 30:15 33:24,24
counted (1) 6:7
counts (2) 3:4 31:8
course (2) 14:25 22:21
court (78) 1:1 2:1,2,5,12,15,16,21,24 3:9,12,12
  3:15,19,21 4:4,10,24 5:2,12,14,17,18,22 6:4,7
  6:19 7:6,11,11,13,13,14,18,19,21,22 9:20
  10:22 11:4,17,18,20 13:10,11,14,16 26:1,4,5
  26:10,13,13,17,20 27:24 29:11,22 30:4,6,9,11
  31:1,13,20 32:3,8,10,15,20,24 33:1,13,14,16
  33:18,21
courtroom (3) 20:9,9 27:11
courts (1) 15:19
Court's (3) 7:23 11:22 33:10
covered (1) 14:12
CPE (1) 1:21
crafted (1) 19:24
created (7) 8:23 12:17 13:4 14:15,19 18:19 29:1
credit (3) 6:24 7:6 12:4
crime (1) 18:9
crimes (1) 30:21
criminal (3) 2:11 27:4,13
criminally (1) 27:3
cross-examination (1) 10:4
cross-examine (1) 13:5
CRR (2) 1:21 34:12
culpability (1) 11:3
culpable (3) 11:2 26:24 28:8
custody (6) 6:5,21,23 7:1 29:12 32:11
cut (2) 12:6,8

**D**

daily (1) 23:18
dangerous (4) 15:20 16:1 17:24 30:22
date (6) 7:1,2,3 29:25 30:9 33:4
Dated (1) 34:9
David (1) 11:4
day (5) 22:15 23:18 26:7 30:4 34:9
days (13) 5:23 6:2,2,17,17,25 11:19 16:10,12
  30:11 31:21,23 33:24
debriefed (1) 8:14
deceiving (1) 13:8
December (4) 7:4,5,7 14:5
decide (2) 5:3,5
decision (1) 16:19
decisions (1) 6:5
deeds (6) 20:11 22:25 23:13 24:18 25:13,22
Defendant (15) 1:7,18 2:2 17:9 26:3,18,20 29:11
  30:13,17,20 31:5,7 33:9,20
Defendant's (3) 7:18 11:8 31:13
defense (2) 8:1 9:2
departure (1) 26:18
deserve (1) 28:22
deserved (1) 28:21
deserves (2) 28:8,22
designation (1) 32:2
despite (1) 32:4
destitute (2) 19:9,20
detained (2) 5:23,25
determination (2) 6:18 30:10
devices (1) 30:22
diagnoses (1) 25:4
DiBiano (6) 8:9,14,18 9:5 11:5 16:7
different (2) 8:18 21:11
difficult (2) 22:24 25:4
dime (1) 23:10
direct (2) 4:16 16:16
disabilities (2) 4:20 22:4
disability (1) 24:19
disagree (1) 6:7

**D**

disappointing (1) 29:4
disclosure (1) 31:2
discovered (2) 13:19 18:19
discretion (1) 25:20
discuss (1) 2:25
discussed (4) 4:21 5:9,24 14:1
distinguishing (1) 11:3
district (5) 1:1,1,12 7:5 30:18
DNA (1) 31:6
document (15) 8:11 12:11,13,17,22 13:3 14:10,10
  14:15,19 15:8 19:22,22,24 30:1
documents (16) 9:18 10:2,17 14:7,14 15:6 18:2,4
  18:6,7,8,10,12,14,21,25
doing (7) 15:18 18:23 23:6,13 24:10,16 25:13
dollars (1) 19:19
dorm (1) 15:12
doubts (1) 10:5
Douglas (2) 21:20 22:12
downward (1) 26:18
dozens (2) 23:16,16
Dr (5) 8:19 9:7,8 23:10 32:20
draft (1) 4:19
drafted (1) 8:20
dressed (1) 24:14
drives (1) 21:13
drop (1) 3:6
drove (1) 21:10
drug (3) 23:7 32:11,23
dupe (1) 11:7

**E**

earlier (2) 13:2,2
earliest (1) 7:25
early (1) 14:15
Eastern (1) 7:5
easy (1) 15:11
effort (1) 18:1
efforts (2) 21:4 22:8
egg (1) 19:7
either (2) 5:5 14:14
electricity (1) 23:9
element (1) 8:25
eligible (1) 32:5
eloquent (1) 13:18
employment (3) 4:16,23 5:4
encourage (1) 22:7
engaging (1) 27:2
English (1) 23:19
enhancement (1) 27:19
entire (2) 18:14 31:17
entire (1) 33:17
equivalent (1) 6:14
error (1) 4:12
ESQ (1) 1:18
essential (1) 20:23
established (1) 8:16
event (1) 3:16
events (3) 15:5 17:4,24
eventually (2) 17:10 24:17
everybody (1) 17:7
evidence (3) 8:16 9:22 10:23
exaggerated (1) 12:5
example (1) 21:1
exceed (1) 30:10
excellent (1) 10:4
excuse (2) 9:23 27:1
excuses (1) 13:3
excusing (1) 11:2
executed (1) 18:5
exhibit (3) 17:12 23:5,15
exist (1) 6:4
existed (2) 8:11 9:9
existence (1) 12:22
expect (1) 32:5
expenses (1) 23:9
experience (2) 15:17 20:12
expired (1) 6:12
explain (4) 7:22 8:7 14:10 15:7
extent (1) 4:21
extradition (1) 6:11
extraordinary (1) 23:22
e-mail (1) 8:11

**F**

face (2) 12:11 22:10
facility (8) 15:11,15,20,20 24:1,15,17 25:6
fact (16) 6:12,13 7:15,23 8:25 9:2 10:8 11:10,16
  11:23 13:8 15:21 22:7 23:13,23 33:10
factors (1) 26:16
facts (1) 6:4
factual (1) 15:7
failsafe (1) 9:25
failure (1) 3:10
fair (1) 29:6
fake (1) 12:11
false (1) 8:3
falsely (2) 11:17 27:25
family (3) 17:6 21:19 22:17

far (1) 32:13
fast (1) 3:2
father (3) 17:18 22:9,15
fault (1) 3:2
FBI (6) 17:2,3,8,10,11,23
FDC (1) 24:1
February (1) 8:11
federal (4) 15:12,13,19 18:1
Feds (1) 17:15
feel (1) 24:23
feet (2) 20:4 25:19
feet (1) 22:18
fellowship (1) 23:19
file (3) 33:3,3,6
filed (1) 4:17
filled (1) 23:18
final (5) 11:22 30:10 31:16,17,20
finally (2) 21:14 24:16
financial (2) 18:22 31:2
finding (1) 4:25
findings (6) 5:13,13,17,18 33:10,14
finds (1) 26:20
fine (4) 3:25 4:2 26:21,21
finished (1) 21:25
firearm (1) 30:22
firm (1) 22:2
five (4) 3:3 4:18 7:13 8:1
five (16) 5:23 6:2 7:20 2 27:25 28:2,20,23,24
   29:3
five-year (1) 12:24
FL (1) 1:17
Floor (1) 1:19
Florida (4) 1:1,7,22 22:19
flows (1) 18:9
follow (1) 20:11
following (1) 31:1
follows (1) 7:22
food (1) 23:3
foot (1) 10:3
foregoing (1) 34:6
foreign (1) 18:2
forfeit (1) 19:23
forfeited (10) 19:1,2,11,16,17,17,18,18,19,21
forfeiture (10) 11:21,22 18:19,20 19:3 25:22
   31:13,15,21 32:13
forfeitures (1) 18:13
Forgione (66) 1:6 2:6,15 5:22 8:5,13,14,22,24 9:2
   9:8,9,18 10:2,7,8,10,16,21 11:7,12,13 12:4,14
   12:16,16 13:5,23 14:9,13,17 15:5,9,14,21
   16:18,24 17:5,7,11,13,21,22 18:5,11,11 20:8
   22:16 23:10,25 24:14 26:2,25,25 27:5,14,15
   28:1,10,15,21 29:4,6,12 33:1,18
Forgione's (6) 4:20 5:10 11:1 16:22 20:12 22:16
forgive (1) 11:7
forma (1) 33:6
forth (2) 12:12 18:25
forthright (1) 14:13
forward (3) 10:20 15:3 16:12
founds (1) 22:22
four (3) 5:23 12:18 13:2
four-day (1) 14:8
four-level (1) 27:19
Frank (3) 14:18 19:8 20:18
Franklin (1) 1:21 34:5,11,12
frauds (1) 27:3
Friday (3) 1:19 25:25 30:5
front (1) 8:6
fuel (1) 23:9
full (1) 25:11
full-time (3) 4:15,23 5:3
function (1) 6:18
funds (2) 18:17 20:2
Futerfas (13) 1:18 2:4,13,14,20,23 3:20,23 4:13
   5:8,16,20 7:3 10:6 13:15,17 26:12 29:20 31:23
   32:4,9,22,25 33:12,15

### G

G (1) 31:4
generally (1) 15:13
George (7) 1:6 2:6 8:21 22:17,20 23:25 29:11
getting (3) 27:18 28:18,24
get-go (1) 12:15
give (1) 20:24
go (10) 10:13 11:19 14:10 15:2 16:12,14 17:8 25:7
   29:8 32:20
goes (1) 21:13
going (22) 4:23 5:3 7:12,17,17,19 9:16 12:15
   14:20,21 15:22 16:17 20:16,16 25:18 26:17
   29:8,22,23 30:1,2 31:24
good (17) 2:2,3,4,8,12,13,16 9:24 17:16 20:10,17
   24:7 25:13,13,22 28:12 33:18
gotten (1) 28:16
Government (30) 1:4,15 5:24 6:1,7,9,10 11:1 14:6
   15:1,23 16:4,6,11,14,18 18:3,8,22,25 19:11,25
   20:2 24:9 25:16 26:19 28:10,17 29:8 33:16
government's (9) 12:1 13:18 16:3 18:1 26:17
   28:19,25 29:5,6

### H

hand (1) 21:3
hands (1) 6:23
happen (2) 9:16 14:3
happens (2) 9:17 20:12
harbor (1) 21:24
hard (1) 22:7
hardship (1) 15:25
harm (1) 29:2
harsher (1) 28:8
hatched (1) 17:25
health (1) 31:2
heard (7) 7:8 9:5 11:25 13:15 16:8 21:19 22:23
hearing (5) 9:14 10:18 27:13 29:23 30:12
held (1) 6:8
help (3) 16:7 18:10 20:20
helped (4) 18:8 21:3,7 24:12
helping (5) 17:14 21:11,14 24:6 25:14
hiding (1) 3:18
high (1) 22:1
highlights (1) 20:24
hindsight (1) 9:17
hired (1) 9:3
history (3) 27:1,2,13
holding (1) 23:20
home (2) 19:10,13
homeless (2) 23:2,6
homes (2) 19:6,10
Honor (88) 2:3,4,8,10,13,19,20 3:1,14,23 4:6,9,11
   4:25 5:1,11,16,26 6:10 7:4,10 13:15,17,21
   14:11 15:9,10 17:5 19:1 20:6,24 21:18,19
   22:23 24:19,21 25:11,15,16,17,19,23,24 26:5
   26:12 29:20,24 31:23,23,25 32:6,9,12,22,25
   33:12,15,17
HONORABLE (1) 1:11
Honor's (6) 4:16 16:8 25:20,20 31:18 32:1
hopeful (1) 29:25
hopefully (1) 11:22
hoping (1) 32:4
horrible (1) 13:8
hospital-type (1) 24:17
host (1) 11:17
hosted (1) 22:17
hour (2) 13:19 20:6
hours (2) 11:19 30:17
house (5) 18:15,15,19,20 19:15
housed (1) 15:15
Hurricane (1) 21:5
hurt (4) 14:14,24,25 18:11

### I

identical (1) 8:21
Igloo (1) 14:7
illness (1) 11:6
immediately (5) 13:25 14:3 18:7 22:20 31:7
important (3) 11:21,23 14:21 24:21
impose (2) 5:6,7
imposed (6) 5:7 26:21 27:24,25 33:2,9
imprisoned (1) 29:13
imprisonment (2) 30:13 31:10
incarceration (5) 7:20 13:12 23:14
inclined (1) 25:21
include (3) 3:10 5:6 6:19
including (1) 26:6
independently (1) 8:11
indictment (1) 28:7
individual (6) 17:5,7 20:23 21:17,18 24:15
individuals (3) 15:17 17:3 24:11
influential (1) 22:5
information (9) 3:4,5 8:6 14:14,17 16:23,25 17:1
   17:9
inmate (6) 17:6,21 24:25,25 25:2,10
inmates (4) 15:14 23:20,20 25:2
input (1) 8:2
inspector (1) 12:1
instill (1) 22:13
instrumental (1) 8:9
insurance (1) 17:7
intensive (1) 14:8
interaction (1) 15:1
interest (3) 20:15 24:16 31:14
interesting (1) 7:15
intermingled (1) 19:16
invaluable (1) 9:12
investigation (3) 2:11,18 12:18

### J

jail (4) 24:18,21,22 31:24
January (2) 8:12 14:4
JUDGE (1) 1:12
judgment (2) 7:2 29:11
judgment's (1) 33:4
Julie (2) 2:10 22:16
July (1) 17:13
jury (6) 8:4,24 10:5 11:6 12:13,17

### K

Katrina (3) 21:5,16 22:17
KENNETH (1) 1:11
Kerry (2) 1:15 2:8
kill (1) 17:6
kind (4) 20:19 25:5 26:23 27:2
kinds (1) 15:19
knew (3) 9:8 12:9 17:3
know (8) 4:23,25 6:5 21:17 24:5 25:16 29:4 31:25
knowing (1) 9:3
known (2) 13:3 21:2

### L

Language (1) 23:19
Larry (1) 20:9
latched (1) 11:6
late (2) 13:19 20:6
laughed (1) 23:22
laundering (1) 4:9
law (4) 22:1,2,17 27:2
leads (1) 16:5
leaf (1) 20:16
learned (5) 9:7 13:24 16:25 17:6 20:17
leave (3) 23:23,24 33:6
leaves (1) 21:13
left (1) 21:22
legal (1) 32:19
lend (1) 21:3
length (1) 17:8
leniency (1) 25:23
lenient (2) 25:6,18
Lester (2) 31:18 32:1
letter (6) 8:19,21 9:7 12:1 17:11 23:4
letters (3) 16:24 21:9,16
level (1) 28:3
levels (3) 3:11 27:17,23,25 28:2
life (12) 13:23 20:10,12,19 22:6 24:18 25:1,13,22
   27:13,15 28:12
likening (1) 11:4
links (1) 8:6
LipoBan (3) 8:18 18:18 19:12
listening (1) 25:24
lists (1) 4:14
literally (4) 12:23 16:10 19:2 24:13
little (6) 11:25 12:8 13:21 15:13 22:8 26:23
lived (2) 16:2 25:13
living (1) 31:24
Long (1) 31:25
longer (1) 22:23
look (3) 20:22 28:23,23
looked (5) 10:1 11:16 12:18,22 22:15
looking (11) 3:17 9:17 27:12,15,18,21 28:3,7,15
   28:20 29:3
looks (1) 11:1
lose (1) 22:10
loss (2) 10:19 29:1
losses (2) 30:8,10
lost (1) 19:14
lot (2) 20:12 21:6,11 29:2
luck (1) 33:19

### M

Madison (2) 1:19 2:14
maintain (1) 4:23
making (2) 3:11 19:13
man (2) 20:14 22:12
manager (1) 27:19
manages (1) 22:4
mandatory (1) 7:6
manner (1) 33:10
map (1) 18:8
March (2) 1:8 8:10
MARRA (1) 1:11
marshals (1) 24:9
Massabni (2) 8:17 11:4
mate (1) 21:23
matter (2) 15:22 34:8
matters (1) 9:19
max (1) 28:14

### maxed (3) 28:13,13 29:7
maximum (3) 14:1 28:17
Maya (4) 8:19 9:7,8 32:20
Maya-Sarcona (1) 9:9
Mayor (1) 23:4
mean (1) 21:7
meaningless (1) 3:8
means (2) 3:10 21:8
medication (5) 24:20,22,23 25:8,9
meet (2) 15:24 20:10
meeting (2) 17:2 19:8
meetings (2) 14:6 16:14
memo (2) 17:4 20:25
memorandum (3) 4:21 19:1 23:5
mental (6) 4:20 11:6 22:4 24:19 25:4 31:2
merely (1) 8:2
Merit (1) 34:5
merits (1) 25:23
messed (1) 3:13
met (5) 8:17 9:8 11:17 17:3 20:18
Mexican (1) 32:18
Mexico (1) 32:13
Miami (7) 22:1 24:1,1,10,11,15 25:9
Michael (1) 16:6
Michelle (1) 21:1
mid (1) 16:10
middle (1) 14:24
Mike (1) 8:9
million (3) 3:25 4:5 19:19
mind (1) 14:2
minimum (1) 7:16
minor (1) 3:23
minutes (1) 20:7
missed (1) 4:6
mistake (1) 3:9
model (4) 24:25,25 25:2,10
modifications (2) 5:14,19
moment's (1) 15:24
money (7) 4:9 17:7 18:9 19:16,24 22:25 23:3
monies (4) 18:14,15 19:5,16
month (2) 23:2 24:8
months (16) 13:12 14:5 25:16 27:21 28:4,5,8,14
   28:15,17 29:7,13,14,14,15 31:10
mood (1) 24:24
Morally (1) 17:15
motion (5) 3:11 7:8,13 9:16 26:17
move (2) 23:25 24:9
moved (2) 24:2,17
moves (1) 22:22

### N

name (1) 9:6
National (4) 8:18 12:20 18:17 19:12
nature (1) 20:23
necessarily (2) 5:21 20:11
need (8) 2:25 3:1,8,22 10:24 16:11,15,18
needed (4) 10:7,10 18:3 19:25
negatively (1) 18:23
listening (1) 25:24
negotiating (1) 28:17
nest (1) 19:7
never (4) 3:20 22:9 23:10 27:3
new (15) 1:19 2:14,14 7:5 14:1 19:4,6,10 20:16
   21:6,10,10,24 22:19,22
Nicholson (1) 2:11
non (1) 6:14
northeast (1) 32:7
noted (2) 6:3 31:4
notice (2) 15:24 33:3
notwithstanding (1) 24:2
November (3) 4:17 6:3 34:9
Number (1) 2:6
numbers (2) 12:23 13:1
numerous (2) 7:24 16:13
NY (1) 1:19

### O

object (2) 3:9 33:10
objected (1) 4:18
objection (2) 5:21 27:18
objections (2) 2:24 33:13
objectively (1) 14:24
observed (1) 15:2
obtain (1) 18:21
obviously (3) 5:9 13:3 14:22
occurred (2) 8:9 18:13
October (1) 12:24
offense (1) 8:1
offered (1) 22:18
office (3) 1:15 23:17 30:18
officer (3) 4:11 21:22 29:19
Official (1) 1:21
offshore (2) 18:3 3
okay (9) 3:7,15,19 6:19 20:15 26:4 32:10,16 33:18
old (1) 25:11
onus (1) 8:8
operation (1) 27:7
opposed (1) 9:1

### maxed (3) 28:13,13 29:7

order (7) 2:1 11:23 26:7 31:15,16,16,21
ordered (1) 30:7
orders (1) 31:13
organization (3) 8:8,10 9:11
organizer (1) 27:19
original (1) 11:5
originated (1) 18:16
outside (1) 23:10
overkill (1) 27:20
owner (1) 12:16
o'clock (1) 30:6

**P**

page (4) 4:18 6:3 23:16,17
pages (1) 23:16
Palm (4) 1:7,17,22 19:3
paperwork (1) 18:5
paragraph (3) 3:3,24 4:14
part (7) 8:6,7,22 11:22 15:15 26:8 31:4
participating (1) 21:4
particular (1) 16:23
particularly (2) 13:19 16:6
parties (1) 26:14
partner (1) 11:5
patients (1) 23:7
pauperis (1) 33:7
pay (3) 26:20 31:7 33:5
paying (1) 23:8
penniless (2) 19:9,20
Pennsylvania (1) 32:7
people (9) 13:8 15:19 20:10,20 21:7,11 24:4,6 29:1
period (3) 7:19 13:11 14:5
perjure (3) 28:2,7,11
permissible (1) 31:3
person (4) 17:10,17 24:16 30:18
persona (1) 6:14
perspective (2) 13:22 26:23
Pharmaceuticals (3) 12:21 18:18 19:12
phone (1) 18:6
phonetic (1) 21:1
physical (1) 4:20
picture (3) 18:22 28:23
piece (1) 15:6
place (2) 16:1 18:14
placed (1) 30:14
plane (1) 6:15
play (1) 4:8
played (1) 14:25
plea (4) 3:25 4:1 14:4 28:13
plead (3) 11:16 27:23 28:11
pleading (1) 30:1
please (5) 2:2,7 7:11,11 13:10
pleasure (1) 26:1
pled (6) 3:3,5 4:8 28:1,4,6
plot (1) 17:6
plots (1) 17:24
point (4) 4:13 11:23 23:25 24:21
possess (1) 30:22
possessing (1) 30:21
possibilities (1) 7:24
possible (2) 4:24 9:2
postal (1) 12:1
potential (2) 3:25 4:15
potentially (1) 9:22
practice (1) 32:1
pray (1) 17:19
preliminary (4) 26:6,7 31:15,16,17
preparation (1) 16:21
prepared (4) 16:9,11,13 31:18
prepped (1) 10:9
present (2) 2:15 20:1
presentation (1) 11:24
presented (2) 10:4 11:25
presentence (10) 2:18 3:24 4:3,14,19 5:13,18 25:3 26:14 31:4
presumptuous (1) 25:17
pretty (2) 6:24 27:7
primarily (1) 26:25
prior (5) 6:5 16:12 19:7,8 20:14
prison (2) 27:13,15
prisoners (1) 15:16
Prisons (2) 25:5 29:13
privilege (1) 20:8
probation (8) 4:11,12,17 5:5,9,21 29:19 30:18
problem (2) 11:12 12:12
problems (2) 15:25 17:18
proceed (1) 32:18
proceeding (2) 31:22 32:16
proceedings (3) 1:10 34:2,7
product (1) 9:6
program (2) 32:11,23
prohibited (1) 30:21
pronounce (1) 26:22
pronounced (1) 33:11
proof (1) 16:8
properties (1) 23:6
property (2) 23:8 31:14

prosecuted (1) 27:3
prosecution (3) 14:22 20:21 27:4
prosecutor (1) 14:9
protecting (1) 21:24
prove (1) 8:4
provide (1) 23:3
provided (4) 8:5 14:14 16:5,23
providing (1) 26:18
PSI (3) 3:10,10,22
public (1) 12:6
purchase (2) 18:15,15
pzrhasel (1) 19:10
purported (1) 12:13
pursuant (6) 6:1,13 7:14 9:19 29:10 30:7
pushing (1) 8:1
put (8) 3:2 7:2 8:7 9:10 14:15 15:5 18:25 26:23
putting (1) 15:4
p.m (1) 30:12

**Q**

qualities (1) 22:13
question (4) 8:3 9:13 14:16,20
quickly (1) 6:24
quite (1) 13:18
quote (1) 17:13
quote-unquote (1) 8:20

**R**

raised (1) 21:20
ran (3) 19:11,12,12
range (3) 27:12,21 28:4
Raton (2) 21:9,12
reach (1) 17:10
readily (2) 14:2,18
ready (5) 10:9,16,21 16:14,19
real (2) 8:2 12:16
realized (2) 10:23 12:23
really (7) 4:5 5:8 8:13 9:23 11:12,14 20:21
Realtime (1) 34:6
reason (3) 12:25 23:12 25:2
reasonable (1) 29:3
reasons (1) 23:23
rebuttal (1) 16:18
recall (1) 11:4
received (7) 23:10 24:20,22,23,24 25:7,9
recommend (7) 6:19,24 7:6 32:1,3,6,10
recommendation (7) 5:4 6:20 7:20 25:5 32:8,23 32:24
recommendations (1) 7:12
recommended (1) 25:16
record (3) 2:3 6:6 34:7
recount (1) 17:4
recover (1) 20:2
recovered (1) 9:19
reduce (2) 7:18 28:19
reduced (1) 27:17
reduction (2) 7:14 13:10
referenced (1) 12:21
reflect (1) 6:6
Reform (1) 29:10
regards (1) 17:14
region (2) 32:1,7
Registered (1) 34:5
rehabilitative (1) 33:7
related (1) 23:9
relationship (1) 9:9
release (1) 4:15,22 19:25 30:13,14,17,20,25 31:11 33:22,23
released (1) 30:19
religious (3) 20:14 22:12 23:20
relying (1) 24:4
remarks (2) 13:18 14:12
rent (1) 23:11
repeatedly (1) 14:25
repeating (1) 22:24
repent (1) 23:21
repetitive (1) 13:19
report (12) 2:18 3:24 4:3,4,14,19 5:13,18 25:3 26:14 30:18 31:4
Reporter (4) 1:21,21 34:5,6
represent (1) 20:8
represented (1) 15:18
request (4) 5:6 6:1,8 32:3
required (2) 5:5 19:22
requirement (1) 31:3
rescue (1) 21:4
resolve (1) 3:22
respect (4) 18:9,24 22:13 33:22
responded (1) 21:3
responsibility (1) 25:12
responsible (1) 25:19
restitution (2) 26:21 29:22
restriction (1) 31:3
retired (1) 21:21
Retreat (1) 22:22
retrieved (1) 18:7
return (1) 21:15
reverse (1) 9:1

reviewed (2) 2:18,21
right (20) 2:17,24 3:17 5:12,15 7:8 17:14,15,15 20:3 22:9 26:13 29:17 31:14,20 33:1,2,18,22 34:1
Riviera (2) 23:1,4
RMR (2) 1:21 34:12
Road (5) 15:10,12 17:1 23:21,24
room (1) 14:6
run (1) 23:3
running (2) 9:2 11:10

**S**

S (2) 1:15,18
safe (1) 17:20
sale (1) 19:6
sales (1) 19:6
Sarcona (45) 8:8,13,17,20,25 9:3,6,7,10 10:3,9 11:5,6,10,11,24 12:3,5,6,9,9,12,14,15 14:16,19 15:11,14,21 16:16 19:8 20:18 26:24 27:1,6,10 28:6,6,12,15,22 29:2,9,25
Sarcona's (2) 8:11 14:27:11
savings (1) 19:5
saw (1) 24:15
saying (1) 11:6
says (4) 3:3 21:2,8 22:17
scene (1) 21:12
schedule (1) 30:11
scheme (8) 8:3 9:11 11:14 27:14 29:1
school (1) 22:1
search (2) 9:19 31:4
seated (1) 3:2
second (3) 3:4,8 23:19
Section (2) 26:16 30:8
see (3) 4:7 20:23 21:18
seeing (1) 10:5
seek (1) 33:6
seized (1) 19:19
self-aggrandize (1) 11:9
self-employment (1) 31:3
self-imposed (1) 27:22
sensitive (1) 13:10
sent (3) 8:11 20:21
sentence (15) 5:7 7:18,19 13:11 25:18 26:8,22 27:7 28:9 31:10,12 33:2,9,11,14
sentenced (2) 27:10 28:5
sentencing (6) 1:10 2:17 10:18 27:12 29:10 30:11
serious (1) 15:20
served (4) 7:7 29:15 30:16 33:24
sessions (1) 14:9
set (4) 8:11 26:16 29:25 30:9
shelter (1) 23:2,3
ships (1) 21:23
shortly (1) 8:16
shot (1) 30:4
showed (1) 18:14
shows (1) 20:3
sides (1) 2:18
sign (1) 19:22
signature (1) 20:1
signed (3) 12:22 19:21 26:7
significance (1) 30:2
significant (7) 16:20 19:7 24:19 25:8,23 27:7 28:16
significantly (1) 18:10
sir (1) 33:19
sister (1) 22:16
sit (2) 14:9 17:19
situation (4) 5:10 8:17 18:19 21:16
six (2) 6:2 21:21
Sixty (1) 29:17
skills (1) 25:1
slightly (1) 15:22
SlimAmerica (2) 8:17 11:12
small (1) 4:13
sons (4) 19:5 20:8 21:19,20
sophisticated (1) 31:0
sorry (4) 3:12 5:16 29:17 33:12
sort (2) 27:4,6
sources (1) 23:11
South (1) 1:16
SOUTHERN (1) 1:1
speak (2) 17:11 27:5
special (5) 2:10 6:16 31:1,8,11
specific (3) 14:6 21:10,13 23:2
spoke (3) 8:14 10:6 17:7
spoken (2) 10:20 17:5
stand (1) 22:9
standard (2) 14:22 30:24
standby (1) 10:2
starting (1) 8:10
Stasack (1) 21:1
state (3) 27:4 41 15:15
stated (2) 15:4 16:6
statement (1) 26:6
statements (1) 26:14
States (17) 1:1,3,12,15 2:5,9,9 6:8,10,15,22 7:12 9:15 10:20 11:18 31:7 32:14
stationed (1) 21:25

statutory (3) 3:16 26:15
stay (1) 17:20
stayed (1) 24:7
steering (1) 17:16
Stephen (3) 1:21 34:5,12
stipulated (1) 10:16
stood (1) 10:16
stopped (1) 12:7
straight (1) 28:6
streamline (1) 16:7
street (2) 1:22 14:7
streets (1) 27:4
stroke (1) 24:12
strongly (1) 17:22
structure (1) 18:23
study (1) 23:19
subject (2) 18:20 19:13
submit (1) 30:23
substance (1) 30:23
substantial (1) 26:19
success (1) 22:8
successful (1) 19:4
suffering (2) 24:12,19
suggest (2) 6:17 13:11
suggested (1) 17:22
suggests (1) 3:25
Suite (1) 1:16,22
superseding (1) 3:5
supervised (8) 4:15,22 30:14,20,25 31:11 33:22 33:23
supplies (1) 23:3
suppressed (2) 9:20,22
suppression (1) 9:14
sure (7) 8:12 9:15 10:11 16:2,13,14 28:22
sustained (1) 27:18
system (1) 32:19
s/Stephen (1) 34:11

**T**

table (1) 2:10
take (4) 4:10 20:1 25:21 28:2
taken (4) 6:21 7:1 12:23
takes (1) 35:11
talk (4) 20:10,10,13,13
talks (1) 25:3
taxes (2) 23:8,9
teaching (1) 32:18
telephonically (1) 16:25
tell (13) 3:9,12 8:24 10:22 11:18,20 13:21 14:11 21:6 31:18 23:22 24:6
telling (1) 24:5
term (6) 29:13,13,15 30:14,15 33:23
terms (2) 16:7 29:14
testified (3) 8:14 16:16 27:25
testify (8) 10:2,16,21 11:17 16:9,13,17,20
testimony (1) 8:15
thank (15) 2:3 3:14 13:13,14 17:16 25:25 26:1,9 26:10,12 32:9,17,25 33:21 34:1
thanks (1) 17:13
theory (1) 13:2
thereabouts (1) 27:10
thing (3) 17:14,15 28:15
things (17) 3:1 8:7 9:5,14 10:8 11:19,21 12:19 14:11 15:6 21:14 23:12,22 24:5 26:6,23 28:12
think (18) 3:18,20 6:2 9:23,23 10:4 11:9,15 15:2 16:7 20:22 22:1 24:6,21 25:23 27:9 29:3,5
third (1) 22:1
thought (6) 4:9 9:11,15 11:13 12:2 27:20
threats (1) 15:25
three (11) 14:8 24:8 27:10,23 28:18 30:14,15 31:11,21 32:15 33:23
time (11) 7:7,25 9:17,18 12:22 14:1 15:9 21:24 24:7 25:8,24
timeline (1) 15:4
times (3) 10:1 16:4 25:7
title (1) 31:14
today's (1) 32:16
told (6) 12:4,8,11,16 13:6 22:9
tolerance (1) 22:14
top (1) 28:18
total (3) 25:21 31:9,10
tragedy (1) 22:20
transcript (2) 1:10 34:7
transferred (1) 14:1
transmitted (1) 17:2
treatment (1) 31:2
treaty (1) 6:11
trial (9) 10:1,2,9,23 12:1,13 16:7,10,13
tried (2) 7:23 22:13
trip (1) 6:16
truthful (2) 14:13,24
try (4) 13:18 20:2,4 30:3
trying (4) 11:19 12:5,8 13:9
turn (2) 17:18 30:16
turned (1) 23:1
turning (1) 17:14
turns (1) 7:24
two (12) 3:1 7:12 14:8 20:8 21:20 22:25 24:7,11



27:9,10,17 32:14
**two-count (1)** 3:5
**type (1)** 27:2
**typical (1)** 22:20

**U**

**Ukraine (7)** 5:23 6:8,11,23 7:2 19:17,24
**ultimately (1)** 9:12
**unable (2)** 24:13 33:5
**undeniable (1)** 8:23
**understand (2)** 5:10 11:12
**understanding (1)** 7:25
**United (17)** 1:1,3,12,15 2:5,9,9 6:8,10,15,22 7:12
  9:15 10:20 11:18 31:7 32:14
**University (1)** 21:25
**unusual (1)** 20:13
**U.S.C (2)** 26:16 30:7

**V**

**v (1)** 1:5
**value (1)** 13:8
**variance (1)** 7:16
**various (1)** 4:20
**versus (1)** 2:6
**victims (3)** 21:5 30:8,10
**violations (1)** 27:1
**violent (1)** 15:16
**visa (1)** 6:12
**visit (1)** 32:20
**volunteer (1)** 22:19
**vulnerability (1)** 11:8

**W**

**W (4)** 1:21 34:5,11,12
**walk (1)** 20:14
**walked (1)** 27:11
**walks (1)** 20:14
**wall (1)** 12:2
**want (10)** 3:17 5:1 6:6 7:8 17:16 25:4,10,17 26:22
  32:10
**wanted (2)** 10:12 14:11
**warrant (1)** 9:20
**wasn't (3)** 10:11 14:18,19
**way (3)** 4:25 11:2 12:5
**website (1)** 30:3
**weeks (7)** 21:10,13,14 27:9,10 32:14,15
**went (4)** 10:18 14:3 16:22 18:21
**West (4)** 1:7,17,22 19:3
**we're (10)** 3:11 7:17,18 8:12 9:16 11:2,3 29:8 30:1
  32:4
**we've (2)** 17:12 18:25
**willingly (3)** 14:13 16:2 19:21
**willingness (1)** 11:9
**wish (3)** 17:20 26:2 33:2
**witnesses (1)** 16:5
**woman (1)** 21:1
**wonderful (1)** 11:20
**word (1)** 22:10
**words (1)** 22:25
**work (3)** 14:3 22:7 24:10
**worked (3)** 10:24 16:9,12
**working (3)** 14:6 22:2 24:4
**works (3)** 25:13,22 29:17
**worried (1)** 12:4
**worth (1)** 22:24
**wouldn't (4)** 6:22 13:3 14:16 25:4
**write (1)** 16:24
**writes (4)** 17:12 22:5,12 23:5
**written (1)** 9:7
**wrong (1)** 9:24
**wrongs (2)** 20:4,17
**wrote (1)** 17:11

**Y**

**year (2)** 22:23 33:24
**years (15)** 7:20 13:2,2 15:18 21:2,21 25:11 28:18
  28:20 29:3,8 30:14,15 31:11 33:23
**York (14)** 1:9 2:14,14 7:5 14:1 19:4,6,10 21:6,10
  21:10,24 22:19,22

**$**

**$100 (1)** 31:8
**$160,000 (1)** 22:25
**$20 (2)** 3:25 4:5
**$200 (2)** 31:9,11
**$25,000 (1)** 19:18
**$250,000 (2)** 4:2,7
**$300 (1)** 23:2

**0**

**05 (3)** 12:25 13:1,2
**07-80138-CR-MARRA (2)** 1:2 2:6
**08 (1)** 17:13

**1**

**1 (8)** 3:3,4 29:14,17 30:15 31:8 33:24,24
**10 (1)** 33:4
**10016 (1)** 1:19
**12 (2)** 1:8 14:5
**13 (1)** 7:4
**13th (1)** 7:7
**14th (4)** 29:24 30:5,6,12
**17th (1)** 34:9
**18 (3)** 7:5 26:16 30:7
**188 (3)** 28:4,8,15
**1984 (1)** 29:10
**1990s (1)** 18:16
**1995 (1)** 19:3
**1996 (2)** 19:4 23:5

**2**

**2 (6)** 3:4 29:15,18 30:15 31:8 33:24
**2nd (2)** 4:17 6:3
**2:00 (2)** 30:6,12
**20 (6)** 15:18 28:20,21,21,22,24
**2000 (2)** 8:10 20:18
**2004 (1)** 12:24
**2007 (4)** 7:4,5,7 20:22
**2008 (3)** 14:4,5 20:22
**2009 (2)** 4:17 6:3
**2010 (3)** 1:8 30:12 34:9
**22nd (1)** 1:19
**235 (2)** 28:4,8
**240 (1)** 28:5
**25 (1)** 29:8
**260 (2)** 1:19 2:14

**3**

**30 (1)** 29:8
**324 (1)** 27:21
**3340l (2)** 1:17,22
**3553 (1)** 7:17
**3553(a)(1) (1)** 26:16
**3571 (1)** 4:7
**3585 (1)** 5:25
**36 (4)** 28:3 29:14,15,17
**3664(d)(5) (1)** 30:8
**371 (1)** 4:8

**4**

**40 (1)** 21:2
**400 (1)** 1:16
**405 (1)** 27:21
**417 (1)** 1:22

**5**

**5 (1)** 6:3
**5K (1)** 28:18
**5K1 (2)** 3:11 13:10
**5K1.1 (3)** 7:9,14,17
**500 (1)** 1:16
**56 (1)** 25:11
**561)514-3768 (1)** 1:21

**6**

**60 (5)** 13:12 25:16 29:13,14 31:10
**62-count (1)** 3:4

**7**

**7 (2)** 4:18 26:16
**701 (1)** 1:22
**72 (1)** 30:17

**8**

**88 (1)** 3:24

**9**

**9/11 (4)** 21:3,6,7 22:19
**90 (1)** 30:10
**96 (3)** 28:14,17 29:7
**98 (1)** 4:14